UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| POLYMER TECHNOLOGY SYSTEMS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No.  1:10-cv-0061 LJM-TAB |
| ROCHE DIAGNOSTICS CORPORATION, ROCHE DIAGNOSTICS GMBH, ROCHE DIAGNOSTICS OPERATIONS, INC., ROCHE OPERATIONS LTD., | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF ROCHE'S MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION**

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND..........................................................................................................3

ARGUMENT..................................................................................................................................6

    I.    The Court Should Dismiss, and Compel Arbitration of, PTS's Declaratory Judgment Claim for Non-Infringement. ....................................................................6

    II.    The Court Should Dismiss PTS's Claim Seeking a Declaratory Judgment of Invalidity...................................................................................................................9

        A.    The Claim for a Declaratory Judgment of Invalidity is Barred Under General Principles of Res Judicata................................................................................9

        B.    The Claim for a Declaratory Judgment of Invalidity is Barred by the Covenant Not to Sue in the Settlement Agreement. ..........................................................13

        C.    Because the Outcome of the Arbitration Could Moot the Claim for Declaratory Judgment of Invalidity, the Court Should Decline to Exercise Declaratory Judgment Jurisdiction...................................................................................13

    III.    The Court Should Dismiss PTS's Claim for Attorney Fees. .............................................15

CONCLUSION.............................................................................................................................15

**TABLE OF AUTHORITIES**

Federal Cases

Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc., 989 F. Supp. 1237, 1244-46 (N.D. Cal. 1997) .................................................................................................................................. 13

Auto. Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, 502 F.3d 740, 746 (7th Cir. 2007) ................................................................. 9

Baseload Energy, Inc. v. Roberts, 654 F. Supp. 2d 21, 26-27 (D.D.C. 2009) .............................. 13

Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007) ............................... 14

Continental Cas. Co. v. American Nat. Ins. Co., 417 F.3d 727 (7th Cir. 2005) ......................... 6, 9

Corp. v. Town of Cicero, 220 F.3d 522, 529-31 (7th Cir. 2000) .................................................. 10

Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1349 (Fed. Cir. 2002) ................................................................................ 7, 8

DH Tech., Inc. v. Synergystex Int'l, Inc., 154 F.3d 1333, 1345 (Fed. Cir. 1998) ........................ 15

Exelon Generation Co., LLC v. Local 15, Intern. Broth. of Elec. Workers, AFL-CIO, 540 F.3d 640, 646-47 (7th Cir. 2008) ........................................................................ 7

Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365 (Fed. Cir. 2001) ....................................... 8, 13

Fortinet, Inc. v. Trend Micro, Inc., No. C-08-5371, 2009 WL 1139589, at *1-2 (N.D. Cal. April 28, 2009) .................................................................................................................... 13

Goldman v. Northrop Corp., 603 F.2d 106, 109 (9th Cir. 1979) ................................................. 11

Hallco Mfg. Co., Inc. v. Foster, 256 F.3d 1290, 1294 (Fed. Cir. 2001) ...................................... 12

Hecker v. Deere & Co., 556 F.3d 575, 582-83 (7th Cir. 2009) ..................................................... 3

Hoseman v. Weinschneider, 322 F.3d 468, 473 (7th Cir. 2003) .................................................. 13

Intermedics Infusaid, Inc. v. Regents of Univ. of Minn., 804 F.2d 129 (Fed. Cir. 1986) ..................................................................................................... 15

Int'l Harvester Co. v. Deere & Co., 623 F.2d 1207, 1218 (7th Cir. 1980) .................................. 15

Invista North Am. S.A.R.L. v. Rhodia Polyamide Intermediates S.A.S., 503 F. Supp. 2d 195, 201 (D.D.C. 2007) ................................................................................... 8

Kiefer Specialty Flooring, Inc. v. Tarkett, Inc., 174 F.3d 907, 909 (7th Cir. 1999) ....................... 7

Liquid Dynamics v. Vaughan Co., Inc., 355 F.3d 1361, 1371 (Fed. Cir. 2004) .......................... 14

Lubrizol Corp. v. Exxon Corp., 871 F.2d 1279, 1287-88 (5th Cir. 1989).................................... 11

Majeske v. Fraternal Order of Police, Local Lodge No. 7, 94 F.3d 307
    (7th Cir. 1996)......................................................................................................................... 13

Media Techs. Licensing, LLC v. Upper Deck Co., 334 F.3d 1366, 1369
    (Fed. Cir. 2003)....................................................................................................................... 10

Montana v. United States, 440 U.S. 147, 153 (1979) ..................................................................... 9

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ....................... 6

Niro v. Fearn Int'l, Inc., 827 F.2d 173, 175 (7th Cir. 1987)............................................................. 6

Nystrom v. TREX Co., Inc., 339 F.3d 1347, 1351 (Fed. Cir. 2003) ............................................. 14

Perry v. Globe Auto Recycling, Inc., 227 F.3d 950, 952 (7th Cir. 2000)..................................... 10

Phonometrics, Inc. v. Northern Telecom Inc., 133 F.3d 1459 (Fed. Cir. 1998)............................ 14

Rhone-Poulenc Specialites Chimiques v. SCM Corp., 769 F.2d 1569 (Fed. Cir. 1985)................ 8

Roboserve, Inc. v. Kato Kagaku Co., 121 F.3d 1027, 1034 (7th Cir. 1997) ................................ 10

Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211,
    486 F.3d 279, 282-83 (7th Cir. 2007) .................................................................................... 12

Schor v. Abbott Labs., 457 F.3d 608, 615 (7th Cir. 2006) ........................................................... 10

Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974) ................................................................... 14

Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, Int'l, Ltd., 1 F.3d 639, 643
    (7th Cir. 1993)........................................................................................................................... 7

Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008).......................................................................... 10

Tice v. American Airlines, Inc., 162 F.3d 966, 973 (7th Cir. 1998)............................................. 12

Tracer Research Corp. v. National Envtl. Svcs. Co., 42 F.3d 1292,
    1295 (9th Cir. 1994)............................................................................................................... 11

United States v. Fisher, 864 F.2d 434, 439 (7th Cir. 1988).......................................................... 11

## INTRODUCTION

This action arises from the parties' settlement of an earlier patent infringement action involving the same set of accused products, and from the refusal of Polymer Technology Systems, Inc. ("PTS") to abide by: (i) an arbitration clause in the parties' license agreement; and (ii) a settlement agreement and consent judgment that terminated the prior action. Permitting PTS to reopen the proceedings in order to get a second bite at the apple on the issues of patent infringement and validity would not only contravene the plain language of the license agreement, the settlement agreement, and the consent judgment, it would also undermine the bedrock public policies in favor of preserving the finality of judgments and encouraging the private resolution of disputes through arbitration.

In 2003, Roche Diagnostics Corporation ("RDC") and Roche Diagnostics GmbH ("RDG") commenced an action in this Court, alleging, *inter alia*, that PTS was manufacturing and marketing certain medical diagnostics products that infringed U.S. Patent No. 5,366,609 ("the '609 patent"). The parties resolved the 2003 litigation as follows: RDC and RDG granted PTS a license to the '609 patent, and its foreign counterparts, in exchange for ongoing royalty payments based on sales of the infringing products. The License Agreement includes a broad arbitration clause that encompasses any disputes "arising out of or in connection with" the agreement. The parties also executed a Settlement Agreement and a Stipulated Final Judgment, which "definitely set aside" all of the parties' "known or unknown" claims "pertaining to" the 2003 litigation.

After paying royalties for several years pursuant to the License Agreement, in April of 2006, PTS abruptly refused to pay any further royalties for the products that Roche had accused of infringement in the 2003 litigation. After extensive efforts by Roche to resolve this dispute failed, on December 18, 2009, RDC and RDG initiated an arbitration in accordance with the

parties' agreed-upon method for resolving disputes under the License Agreement. In contravention of the arbitration clause, the Settlement Agreement, and the Stipulated Final Judgment, PTS subsequently brought this action on January 15, 2010, seeking a declaration of non-infringement and invalidity of the '609 patent.

The Court should reject PTS's attempt to obtain a litigation "do-over" for two fundamental reasons: *First*, the arbitration clause in the License Agreement unambiguously embraces the issue of whether the PTS products that are the subject of the dispute infringe the '609 patent. Under the License Agreement, a product is licensed, and royalties are owed, if the product is covered by at least one of the claims of the licensed patents, which include the '609 patent. *Second*, PTS has already waived any "known or unknown" claims "with respect to" the 2003 litigation, and dismissed with prejudice any claims or counterclaims "of any kind . . . pertaining to" the 2003 litigation. PTS is therefore precluded from any subsequent assertion of a claim for invalidity of the '609 patent.

Accordingly, defendants RDC, RDG, Roche Diagnostics Operations, Inc. ("RDO"), and Roche Operations Ltd. ("ROL" and collectively "Roche") bring this motion pursuant to the Federal Arbitration Act and Fed. R. Civ. P. 12(b) to dismiss this case in its entirety. Specifically Roche requests that the Court: (1) compel arbitration of PTS's claim of non-infringement; (2) dismiss the non-infringement claim; (3) dismiss the claim of invalidity; and (4) dismiss the claim for attorneys fees.

**FACTUAL BACKGROUND**

Roche and PTS are competitors in the market for medical diagnostics instruments known as "blood analyzers" or "bio-sensing meters." (Khan Decl. Ex. 1, Statement of Claim ¶¶ 9-13.)[1] These hand-held medical devices are designed to be used by patients and healthcare professionals to rapidly test blood samples for various bio-markers such as glucose, cholesterol, or triglycerides. (*Id*. ¶¶ 15-28.) PTS manufactures and markets certain bio-sensing meters under the CardioChek® and CardioChek PA® brand (collectively "CardioChek®"), which are capable of measuring several different biomarkers using "test strips" that are specifically designed for each type of biomarker. (*Id*. ¶ 17.)

The 2003 Litigation and the Parties' Settlement

On June 9, 2003, Roche brought an action against PTS in the Southern District of Indiana, alleging, *inter alia*, that the CardioChek® devices and associated test strips infringed its U.S. Patent No. 5,366,609 ("the '609 patent"). (Complaint, D.I. 1 ("2010 Compl.") ¶ 14; Khan Decl. Ex. 2, 2003 Complaint ("2003 Compl.") ¶¶ 13, 14, 33-37.) In 2003, RDC was the assignee of the '609 patent. (*Id.* ¶¶ 1, 2.) PTS, which was represented throughout by counsel, agreed to settle the litigation and, on December 23, 2003, the parties jointly submitted a Stipulated Final Judgment for the Court's approval. (Khan Decl. Ex. 3, 2003 Docket Sheet.) On December 29, 2003, the Court entered the parties' Stipulated Final Judgment, which states that:

> All damages attributable to or derived from infringement of the Patents-in-Suit have been resolved by a Settlement Agreement which the Parties executed and maintained in confidence; and

---

[1] "Khan Decl." refers to the Declaration of Omar A. Khan in Support of Roche's Motion to Compel Arbitration and to Dismiss the Action filed herewith, which attaches as exhibits certain documents that are integral to the Complaint, such as the complaint in the 2003 litigation, the Settlement Agreement, the License Agreement, and Roche's Statement of Claim in the German arbitration. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (noting that the Seventh Circuit has been "liberal in its approach" to including in the pleadings documents that are central to the plaintiff's claim).

>All other claims, counterclaims, defenses, and requests for relief of any kind, or by any Party pertaining to the causes of action in this case are hereby dismissed with prejudice. Each party shall pay its own costs, expenses, and attorney fees.

(Compl. Ex. B ¶¶ 3, 4 (emphasis added).)  The Settlement Agreement provides, in relevant part:

>Dispositions of Claims.  ROCHE and PTS declare that all their claims with respect to the causes of action in the ROCHE Action, whether known or unknown, are definitely set aside by the execution and fulfillment of this Agreement and entry of the Stipulated Final Judgment attached as Exhibit B.
>
>License Agreement.  The parties agree to enter into the License Agreement under the Patents-in-Suit and all equivalents, national counterparts, . . . or registrations thereof worldwide.  The License Agreement shall be signed simultaneously with this Agreement.
>
> ***
>
>This Court shall retain jurisdiction to enforce the terms of this Agreement (but not the associated License Agreement)

(Khan Decl. Ex 4, Settlement Agreement ¶¶ 4.5, 5, 7.)

The relevant terms and conditions of the License Agreement are as follows: (i) RDC and RDG agreed to grant PTS a non-exclusive license to its portfolio of patents directed to bio-sensing instruments, as well as test strips used with such meters, which included the '609 patent and several foreign-issued counterparts (*Id.* Ex. 5, License Agreement ¶¶ 2.1, Exhibit A.); (ii) PTS agreed to make ongoing royalty payments based on the net sales of any "Licensed Product" (*Id.* ¶¶ 1.9, 3.1.); (iii) the term "Licensed Product" was defined in the Agreement as ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (iv) PTS was obligated to issue periodic reports reflecting the net sales of the licensed products for which Roche would be owed royalties (*Id.* ¶ 3.5.); (v) "[a]ny dispute or claim which may arise out of or in connection with"

4

the parties' agreement "shall be settled by final and binding arbitration" in Frankfurt, Germany (*Id.* ¶ 12.2.); and (vi) the arbitration proceedings shall be conducted in English  (*Id.*).

       PTS's Breach of the License Agreement

PTS paid royalties under the License Agreement until 2006, at which point PTS ceased making any further royalty payments, and refused to provide Roche with any sales reports or to permit Roche's auditors to independently examine the post-2006 sales of licensed products. (Compl. Ex. E at 1.)  The 2010 Complaint attaches as an exhibit a letter from Roche to PTS dated April 16, 2009, in which Roche pointed out that PTS's material breaches of the License Agreement were inexplicable given that the CardioChek® instruments and the associated test strips "continue to" infringe the '609 patent. (*Id.* at 2.)  Roche also indicated in the letter that it was prepared "to commence arbitration proceedings in accordance with Article 12.2 of the License Agreement" if PTS persisted in its refusals to tender payment of the back royalties for the CardioChek® instruments and test strips and to provide Roche with current sales figures for those products. (*Id.* at 3.)

Roche commenced arbitration in Germany on December 18, 2009, invoking the parties' contractual remedy for material breaches of the License Agreement.  (Khan Decl. Ex. 1, Statement of Claim.)  Consistent with its position in the April 16, 2009 letter, Roche contended in the arbitration that PTS owed royalties on the sales of CardioChek® instruments and test strips because ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

5

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

Notwithstanding the arbitration, and PTS's participation therein, PTS subsequently brought this declaratory judgment action on January 15, 2010, asserting claims of non-infringement and invalidity of the '609 patent. By the time of this lawsuit, the '609 patent had been assigned to RDO and ROL. (Compl. ¶ 20.) The 2010 Complaint acknowledges that "PTS entered into . . . a license agreement and entered into a Stipulation of Dismissal of the 2003 litigation," and that the License Agreement provides for the parties' disputes to be arbitrated in Germany. (*Id.* ¶¶ 14, 20-22.) The 2010 Complaint also alleges that the action was precipitated by Roche's demand for royalties on the CardioChek® instruments and the associated test strips. (*Id.* ¶¶ 17-19.)

## ARGUMENT

**I.   The Court Should Dismiss, and Compel Arbitration of, PTS's Declaratory Judgment Claim for Non-Infringement.**

It is a bedrock principle of federal law that arbitration clauses should be liberally enforced in light of Congress's declaration of a strong public policy favoring arbitration of disputes. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (emphasizing that the Federal Arbitration Act is a "congressional declaration of a liberal federal policy favoring arbitration agreements"). In determining whether the parties agreed to arbitrate a certain matter, courts should be "mindful that the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements and that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727 (7th Cir. 2005). "[A]s a matter of federal law, any

6

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24-25. *See also Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 175 (7th Cir. 1987) ("arbitration is favored and should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"). Regional circuit law governs the question of whether PTS's claims for non-infringement fall within the scope of the arbitration clause of the parties' agreement. *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1349 (Fed. Cir. 2002).

As the Seventh Circuit has repeatedly stated, arbitration provisions that extend to any dispute "arising out of" or "relating to" the agreement are "extremely broad and capable of expansive reach." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *see also Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress, Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993) ("'arising out of' reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se."). Broad arbitration provisions give rise to a presumption of arbitrability, and only an "express provision excluding a particular grievance from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration can keep the claim from arbitration." *Exelon Generation Co., LLC v. Local 15, Intern. Broth. of Elec. Workers, AFL-CIO,* 540 F.3d 640, 646-47 (7th Cir. 2008).

The federal presumption of arbitrability squarely applies in this case, where the parties defined the scope of the arbitration clause by utilizing the broadest possible "arise out of or in connection with" language. Moreover, the parties' dispute over whether PTS's products are "Licensed Products" as to which PTS must pay royalties necessarily entails an inquiry into

███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███
███████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████

██████  As the Federal Circuit noted in *Rhone-Poulenc Specialites Chimiques v. SCM Corp.*, issues of claim construction and patent infringement "arise out of" licensing agreements in which the royalty payments "depend[] completely upon whether [licensee] was operating within or outside the scope of" the claims. 769 F.2d 1569 (Fed. Cir. 1985) (such disputes are arbitrable because they are the "quintessence" of a licensing agreement); *see also Deprenyl*, 297 F.3d at 1357-61; *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001) ("The FAA is applicable to settlement and license agreements involving patents."); 35 U.S.C. § 294 (2009) ("the parties to an existing patent validity or infringement dispute may agree in writing to settle such dispute by arbitration").

An order compelling arbitration of PTS's non-infringement defense is also appropriate in this case because: (1) the locus of the arbitration is in a country that is a signatory to the New York Convention; (2) the dispute arises out of a commercial legal relationship; and (3) at least one party to the arbitration agreement is not an American citizen. *See Invista North Am. S.A.R.L.*

*v. Rhodia Polyamide Intermediates S.A.S.*, 503 F. Supp. 2d 195, 201 (D.D.C. 2007); *see also* 9 U.S.C. §§ 202, 206, 208. Section 12.2 of the License Agreement provides for mandatory arbitration in Germany, which is a party to the New York Convention. *See* Zivilprozeßordnung ("German Code of Civil Procedure") § 1061 (2009) (recognition and enforcement of foreign arbitral awards will be in accordance with the New York Convention); *see also* Georgios C. Petrochilos, *Enforcing Awards Annulled in their State of Origin under the New York Convention*, 48 Int'l & Comp. L.Q. 856, 856-88 (1999) (noting that "German . . . law incorporate[s] the Convention by direct reference"). The dispute over the extent of PTS's obligation to make royalty payments plainly arises out of the parties' commercial legal relationship. And, finally, one of the parties to the License Agreement, RDG, is a German corporation having its principal place of business in Mannheim, Germany. (Compl. ¶¶ 2, 16; Khan Decl. Ex. 5, License Agreement at 1.)

The Court should therefore dismiss Count II of the 2010 complaint in accordance with the valid and enforceable arbitration clause in the parties' agreement. *See Cont'l Cas. Co.*, 417 F.3d at 733 (dismissal pursuant to Fed. R. Civ. P. 12(b)(3) is appropriate remedy); *Auto. Mechanics Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA*, 502 F.3d 740, 746 (7th Cir. 2007) (same).

**II.   The Court Should Dismiss PTS's Claim Seeking a Declaratory Judgment of Invalidity.**

    **A.   The Claim for a Declaratory Judgment of Invalidity is Barred Under General Principles of Res Judicata.**

Res judicata is a common law doctrine that preserves the finality of judgments by precluding parties (or their privies) from reasserting claims that previously have been adjudicated on the merits. *Montana v. United States*, 440 U.S. 147, 153 (1979). The modern trend is to use the term "res judicata" to mean only the concept of claim preclusion, and not also the related, but

distinct, concept of issue preclusion. *See* 18 Moore's Federal Practice § 131.10[1][b] (3d ed. 1997) (noting that the modern practice is to use "res judicata" in this limited sense). The res judicata effect of a prior federal judgment is governed by federal law. *See Taylor v. Sturgell*, 128 S.Ct. 2161, 2171 (2008); *Schor v. Abbott Labs.*, 457 F.3d 608, 615 (7th Cir. 2006). The Federal Circuit has held that the law of the regional circuit in which the district court sits applies to "purely procedural issues," such as the application of claim preclusion (or res judicata) principles, notwithstanding the fact that the case generally implicates the infringement and validity of a U.S. patent. *See, e.g., Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003).

The Seventh Circuit has identified three requirements that a party asserting claim preclusion must establish: (1) identity of the claim; (2) identity of parties, which includes those in "privity" with the original parties; and (3) a final judgment on the merits. *See Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 952 (7th Cir. 2000); *Roboserve, Inc. v. Kato Kagaku Co.*, 121 F.3d 1027, 1034 (7th Cir. 1997). All three of these requirements are plainly satisfied in this case.

With respect to the "identity of claim" requirement, the relevant inquiry is whether the newly-asserted claim is within the scope of the earlier lawsuit, which, in the case of a lawsuit terminated by a consent judgment, is determined by analyzing not only the allegations of the complaint but also the parties' agreement as to the claims resolved by the settlement. *See, e.g.*, 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 4443 at 386-87 (1981) (if the parties agreed to settle claims that "were not reflected in the original pleadings, preclusion may extend to claims that were not even formally presented"). Litigants may use a consent judgment to "broaden[] the action—at least for res judicata purposes—by

agreeing to a settlement of that case which included" additional claims. *See, e.g., 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529-31 (7th Cir. 2000); *see also Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1287-88 (5th Cir. 1989); *Goldman v. Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979). This approach to the "identity of claim" requirement comports with the general notion that a consent judgment is essentially "a contract in which the parties deal away their right to litigate over the subject matter." *United States v. Fisher*, 864 F.2d 434, 439 (7th Cir. 1988).

PTS's invalidity claim clearly falls within the scope of the Stipulated Final Judgment that terminated the 2003 litigation. In that judgment, for example, the parties agreed to dismiss not only Roche's claim that PTS's products infringed the '609 patent, but "[a]ll *other* claims, counterclaims, defenses and requests for relief *of any kind . . . pertaining to* the causes of action in [that] case." (Compl. Ex. B ¶3 (emphasis added).) Whatever the scope of the 2003 litigation as defined by the 2003 Complaint, the Stipulated Final Judgment reflects the parties' intention to achieve a complete and comprehensive settlement resolving all of their claims that bear any relationship to the subject matter of the action. As part of that settlement, PTS agreed to relinquish and dismiss with prejudice any requests for declaratory relief "of any kind" that "pertain[]" or relate to the 2003 litigation. (*Id.*) *See, e.g., Tracer Research Corp. v. National Envtl. Svcs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) ("relating to" is even broader in reach than "arising out of"). That category plainly includes a claim for a declaratory judgment invalidating the '609 patent, which was a patent-in-suit in the 2003 litigation.

PTS's invalidity claim would be barred even if the parties had not entered into an expansive settlement and stipulated final judgment. If the Court had simply dismissed Roche's claim for infringement of the '609 patent, PTS would still be precluded from challenging the invalidity of the '609 patent because the instant dispute involves exactly the same products as

those in the 2003 litigation.  *See*, *e.g.*, *Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001); *see also Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211*, 486 F.3d 279, 282-83 (7th Cir. 2007).

Among the many products at issue in the 2003 litigation were the CardioChek® line of hand-held bio-sensing devices and the disposable test strips associated with those devices. (Khan Decl. Ex. 2, 2003 Complaint ¶¶ 13-14, 35-37.)  In April 2009, Roche demanded royalty reports for the CardioChek® devices and their associated test strips, noting that those products "continue to" infringe the '609 patent.  (Compl. ¶¶ 16-17, Ex. E at 2-3.)  ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████ And in its Complaint in this case, PTS has not alleged that the accused CardioChek® devices and test strips are more than colorably different from those that were at issue in the 2003 litigation. (Compl. ¶ 21.)  In the 2003 litigation, PTS had the opportunity to defend its sales of those products on the basis of the invalidity of the '609 patent, but it forfeited that right in favor of avoiding the risk of a protracted and costly litigation.  The straightforward application of claim preclusion principles prevents PTS from asserting its invalidity defense now.  *See Hallco*, 256 F.3d at 1294.

There can be no serious dispute as to whether the second and third requirements of claim preclusion are satisfied.  PTS, RDC and RDG were parties to the 2003 litigation and, as the current assignees of the '609 patent, ROL and RDO are in sufficient privity with RDC and RDG to be bound by the prior judgment.  *See, e.g., Tice v. American Airlines, Inc.*, 162 F.3d 966, 973 (7th Cir. 1998) (noting that a "formal kind of successor interest . . . (e.g., subsequent landowner,

successor corporation)" relationship establishes privity). Finally, a consent decree is a final judgment on the merits capable of triggering res judicata. *See Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307 (7th Cir. 1996).

Accordingly, the Court should reject PTS's attempt to avoid the consent judgment, and should dismiss the invalidity claim as barred by the doctrine of res judicata.

### B. The Claim for a Declaratory Judgment of Invalidity is Barred by the Covenant Not to Sue in the Settlement Agreement.

Consistent with the Stipulated Final Judgment, the Settlement Agreement resolved all of the parties' claims having any relation to the 2003 litigation. The Settlement Agreement between the parties includes a broad covenant not to sue, which provides in relevant part that "*all* their claims *with respect to* the . . . Roche Action, *whether known or unknown* are definitely set aside." (Khan Decl. Ex. 4, Settlement Agreement ¶ 4.5 (emphasis added).) *See, e.g.*, *Hoseman v. Weinschneider*, 322 F.3d 468, 473 (7th Cir. 2003) (noting the breadth of the "known or unknown" language in a release). Thus, regardless of whether PTS's claims are barred under principles of res judicata, the parties entered into a valid and enforceable agreement that plainly discharged any existing or future invalidity claims that PTS might have had in 2003. *See, e.g., Baseload Energy, Inc. v. Roberts*, 654 F. Supp. 2d 21, 26-27 (D.D.C. 2009) (broad release and covenant not to sue is sufficient to preclude subsequent challenge to patent validity); *see generally Flex-Foot*, 238 F.3d at 1365 (contractual agreement to preclude validity challenge is enforceable). The Court should therefore dismiss PTS's invalidity claim as discharged by the parties' Settlement Agreement.

### C. Because the Outcome of the Arbitration Could Moot the Claim for Declaratory Judgment of Invalidity, the Court Should Decline to Exercise Declaratory Judgment Jurisdiction.

Even if the Court were to conclude that PTS is not barred from asserting its invalidity claim, it should nonetheless decline to exercise its discretionary jurisdiction over the declaratory

judgment claim because the parties' dispute could be rendered moot by the outcome of the arbitration proceeding. Jurisdiction over a declaratory judgment action must be present "at all stages of review, not merely at the time the complaint is filed." *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). When events subsequent to the filing of the complaint resolve the infringement allegations that precipitated the declaratory judgment action, the district court should revisit the basis for its jurisdiction over the remaining claims for invalidity. *See, e.g.*, *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007). Moreover, even if jurisdiction exists as a technical matter, the district court exercises discretion to decline jurisdiction if the controversy over the invalidity of the patent-in-suit has been mooted by the resolution of the infringement issues in the case. *See Liquid Dynamics v. Vaughan Co., Inc.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004); *Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459 (Fed. Cir. 1998).

PTS and Roche are already engaged in arbitration in  If PTS were to prevail in the arbitration by establishing that the accused products are non-infringing, that ruling by the arbitration panel would moot any further inquiry into the validity of the '609 patent. Even if PTS does not prevail in the arbitration, the parties will have had an opportunity to review the merits of each others' litigation positions and to narrow the field of factual and legal disputes in a subsequent invalidity action. In similar

contexts, these factors have led courts to deny jurisdiction over stand-alone invalidity claims. *See generally Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*, 804 F.2d 129 (Fed. Cir. 1986) (jurisdiction over the invalidity claims should be declined when a parallel action involving issue of whether accused infringer was licensed to the patent "could well moot the patent suit" seeking invalidity); *see also Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1218 (7th Cir. 1980) (jurisdiction over the infringement claims should be declined when the issue of the patent's validity is pending in a related proceeding).

Accordingly, even if PTS were not barred as a matter of claim preclusion from asserting its invalidity claim, the Court should dismiss the invalidity claim without prejudice.[2]

### III.   The Court Should Dismiss PTS's Claim for Attorney Fees.

Count III of the 2010 Complaint seeks attorney fees pursuant to 28 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  An award of attorney fees under Section 285 is a statutory remedy available to "prevailing parties," and not a separate cause of action upon which relief can be granted. *See DH Tech., Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1345 (Fed. Cir. 1998) (vacating the "district court's decision on exceptional case status because the issue cannot be addressed until there is a prevailing party").  In addition, since this case should be dismissed for the reasons set forth herein, PTS is not a prevailing party in any event.  The Court should therefore dismiss PTS's "claim" for attorney fees under Section 285.

### CONCLUSION

The Court should reject PTS's effort to have a "do-over" on the previously litigated issues of infringement and validity of Roche's '609 patent.  The License Agreement includes a

---

[2]   In the alternative to dismissing the validity claim, the Court should stay the action until the arbitration proceedings have concluded.  *See Intermedics*, 804 F.2d at 129.

broad and expansive arbitration provision that encompasses any dispute that may "arise out of or in connection with" the Agreement. ███████████████████████████████████████████████████████████████████████████████████, this Court should dismiss Count II of the 2010 Complaint and compel arbitration.  The Court should also dismiss Count I of the 2010 Complaint as barred by the covenant not to sue in the settlement agreement and the straightforward application of claim preclusion principles.

Dated: March 11, 2010                           Respectfully submitted,


                                                /s  Robert J. Gunther, Jr. _____
                                                Robert J. Gunther, Jr. (admitted *pro hac vice*)
                                                James P. Barabas (admitted *pro hac vice*)
                                                Omar Khan (admitted *pro hac vice*)
                                                Violetta G. Watson (admitted *pro hac vice*)
                                                Wilmer Cutler Pickering Hale and Dorr LLP
                                                399 Park Avenue
                                                New York, New York 10022
                                                Telephone: (212) 230-8800
                                                Facsimile: (212) 230-8888
                                                Email:  robert.gunther@wilmerhale.com
                                                        james.barabas@wilmerhale.com
                                                        omar.khan@wilmerhale.com
                                                        violetta.watson@wilmerhale.com

                                                Nancy G. Tinsley, Atty. No. 15376-49-A
                                                nancy.tinsley@roche.com
                                                Associate General Patent Counsel, IP Litigation
                                                Roche Diagnostics Operations, Inc.
                                                9115 Hague Road, P.O. Box 50457
                                                Indianapolis, IN  46250-0457
                                                Telephone: (317) 521-1915
                                                Facsimile: (317) 521-2883