**Roche**

**Diagnostics**

Registered Mail

Polymer Technology System Inc.
Attn. Robert S. Huffstodt
7736 Zionsville Road
Indianapolis, IN 46268
USA

Mannheim, March 22, 2007
License Agreement dated December 2003 re Rittersdorf et al., Vogel et al., White et al. patents

Dear Mr. Huffstodt,
Dear Bob,

We refer to the above referenced license agreement ("Agreement") concluded between Polymer Technology System Inc ("PTS"), Roche Diagnostics GmbH and Roche Diagnostics Corporation (Jointly "Roche"). In accordance with Sections 3.5 of the Agreement PTS is obliged – within forty-five days after each Contract Reporting Period - to transmit a written report showing the Net Sales in the preceding Contract Reporting Period. The last written report and the last payment were received by Roche in June 2006 regarding royalties for the months January – March 2006. Roche has repeatedly reminded PTS of its obligation to send the outstanding royalty reports and to make the outstanding royalty payments. Until today we have not received your royalty reports or any royalty payments for the Contract Reporting Periods April-June 2006, July – September 2006 and October – December 2006.

Roche considers PTS's lack of responsiveness and unwillingness to transmit the royalty reports and to make contractual payments as material breach of the Agreement. We herewith ask you to fulfill all your contractual obligations and heal this material breach within sixty (60) days after receipt of this letter. We expressly draw your attention to Roche's rights, in case Roche does not receive the royalty reports and the related royalty payments plus interest payments within the time period provided above: (i) according to Section 8.2 c) – Roche has the right to terminate the Agreement with immediate effect and take legal measures to protect Roche rights, and/or (ii) according to Section 12.2 Roche has the right to request consultation to amicably settle the controversy and in the case of no such amicable solution Roche has the right to start arbitration pursuant to the rules of the German Institution of Arbitration.

With best regards

Roche Diagnostics GmbH
i. V.                        i. V.

*[signatures]*

ns Neuer            Verena Passauer

\nostics GmbH   Sandhofer Strasse 116      Registergericht Mannheim          Geschäftsführung:
                D-68305 Mannheim           HRB 3962                          Dr. Jürgen Schwiezer, Vorsitzender
                Telefon +49-621-7590       Aufsichtsrat:                     Dr. Manfred Baier,
                Telefax +49-621-7592890    Dr. Franz B. Humer, Vorsitzender  Jürgen Redmann,



April 25, 2007

Via Registered Mail

Dr. Verena Passauer
Dr. Hans Joaquim-Neuer
Senior Director
Roche Diagnostics GmBH
Licensing/External Operations
Sandhofer Strasse 116
Manheim, Germany

Dear Drs. Neur and Passauer:

Thank you for your letter of March 22, 2007 proposing that Polymer Technology Systems, Inc. ("PTS") owes royalties to Roche Diagnostics Gmbh and Roche Diagnostic Corporation (jointly, "Roche") and that PTS is somehow in breach of the License Agreement dated December 2003.

We were surprised at both the content and tone of the letter. Early this year, Dr. Peter Schramm, Roche Vice President of Industrial Business North America, and John Wegner, the local Roche Industrial Business Account Manager, told Will Benedict, our Director of Operations, that the new Roche has decided to interact with its competitors "in a more cooperative manner". This is the first we have heard from you that you believe PTS owes Roche royalties, and yet the letter accuses PTS of "unresponsiveness" and threatens arbitration without even waiting to hear our response. This is hardly "more cooperative", and, thus out of step with how the new Roche would like to position itself.

We would first ask that you review the expiration date of the Vogel et al. patent. I believe the Vogel et al. patent mentioned in your letter, i.e., U.S. Patent No. 4,816,224 (the Vogel patent), expired on March 28, 2006. I have reviewed the Stipulated Final Judgment, the Settlement Agreement and the License Agreement and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ or that PTS must continue to pay royalties after the expiration of the '224 patent. We have always thought that the Vogel patent was the reason we were paying royalties, and now that it has expired, we cannot see how the License Agreement is relevant.

You are probably aware that PTS has also purchased some of the assets of Lifestream Technologies, Inc., including United States Patent No. 5,135,716 (the Thakore patent), a copy of which is enclosed. This patent predates all of the Rittersdorf et al. patents, and perhaps Roche may want to take a license under it.

More importantly, you should also know that PTS has developed new technologies in which Roche may be interested. Enclosed find a copy of US Patent Publication No. US 2006/0063267, which is representative of one direction of our new technology. Our HDL strips have been using this new technology since April 1, 2006. We never thought the Rittersdorf et al. patents covered our old HDL strips, because all the Rittersdorf et al. patents require a fluid transport means between a first porous carrier layer and a second porous layer, which we never had, or a contacting step that we never did. Further, all the Rittersdorf et al. claims require precipitation of the non-HDL's which is counter to our new technology. As discussed in the enclosed patent publication at paragraphs [029] and [050], we have found that the precipitation clogs up the pores of the carrier layers, and thus is counterproductive to a complete flow through of the HDL cholesterol to the reagent layer. We would be happy to show you that this new non-precipitating technology is far more accurate than the old precipitating technology. However, even if you are not interested in a more accurate cholesterol measurement, the Rittersdorf et al. patents definitely do not cover this new non-precipitating technology. This is another reason why the License Agreement is no longer pertinent.

If there is some PTS product which you think ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ please let us know. All our products are on our website at CardioChek.com. However, I think if you do a fair review, you will find that all PTS products are now far afield from the technology covered in the remaining patents.

Moreover, we suggest that rather then fight over ancient history, it would do both or our companies good if we focus on today's reality and see if we can do some future business together. We have reason to believe that the Roche Accutrend product line has been drifting and that it no-longer contributes at the level that Roche expects of its businesses. Perhaps, this business would be a better fit for PTS and thus would be worth more in a sale to us than it is as a problematic division of Roche. Such a sale, I think, would be a double win situation for Roche. You could shed a business line before it becomes a total liability, and at the same time add a significant amount to the current year bottom line.

After you have had a chance to review the expiration date of the Vogel patent, PTS's new technology, the Thakore patent, and the possibility of selling us the Accutrend business, let's get together and discuss these developments.

Very truly yours,


Robert S. Huffstodt
President and CEO

C/c Carl A. Forest, Esq.



Diagnostics

VIA E-MAIL (bhuffstodt@cardiochek.com)
& FEDEX (signature required)

Mr. Robert S. Huffstodt
President and CEO
PTS, Inc.
7736 Zionsville Road
Indianapolis, IN 46268

Indianapolis, May 10, 2007
License Agreement dated December 2003 re. Rittersdorf et al., Vogel et al., & White et al. patents

Dear Mr. Huffstodt:

Thank you for your letter dated April 25, 2007 to Mr. Neuer and Ms. Passauer of Roche Diagnostics GmbH with respect to the above-referenced matter. We have considered the various points you raise and now respond as follows.

Initially, we reiterate PTS' obligations under ███████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
Roche considers PTS' failure to provide such written reports as well as respective ██████
████████████████████████████████████████████████████████████████████████████████
Please cure these deficiencies by May 22, 2007.

You note that our letter of March 22, 2007 was the first indication that Roche believes PTS owes royalties under the License Agreement, which has an effective date of August 1, 2003. Notwithstanding the fact Roche has no duty to remind PTS of its obligations under the License Agreement, reminders were in fact sent in the fall of 2006. Although we acknowledge U.S. Pat. No. 4,816,224 and its equivalents have expired, we take issue with PTS' ████████████
████████████████████████████████████████ or that PTS is somehow not obligated to "continue to pay royalties after the expiration of the '224 patent." The Stipulated Final Judgment entered by the District Court on December 29, 2003 clearly recites "Polymer Technology Systems, Inc. has infringed one or more of the claims of the patents in suit, United States Patent No. 6,171,849, 5,786,164, 6,214,570, 4,816,224, 5,366,609 by the manufacture, use, sale, and offer for sale in the United States of products that embody a claimed invention."

**Roche Diagnostics Operations, Inc.**   9115 Hague Rd.   Intellectual Property Law   Tel. 317-521-3295
P.O. Box 50416   Bldg D/273   Fax 317-521-2883
Indianapolis, IN 46250-0416   E-Mail: brian.smiler@roche.com

The License Agreement defines "Licensed Patent Rights" as patents and patent publications listed in Exhibit A, which exhibit appears on pages 20 and 21 of the License Agreement, and includes the Rittersdorf et al. patents, the Vogel et al. patents, and the White et al. patents. Although the Vogel et al. patents have expired, the Rittersdorf et al. and White et al. patents remain valid and are non-exclusively licensed to PTS under the Agreement. We therefore do not see why PTS now deems the License Agreement not relevant.

Your letter also indicates that PTS has acquired the rights to U.S. Pat. No. 5,135,716 to Thakore from Lifestream Technologies, Inc., however an assignment is not acknowledged in the Abstract of Title at the U.S. Patent and Trademark Office. We appreciate you bringing the Thakore patent to our attention. We have reviewed this patent and do not at this time believe we need a license.

We acknowledge receipt of U.S. Pat. Pub. No. US 2006/0063267, which you note is representative of a new technology that PTS has been using in its HDL strips since April 1, 2006. We ask however that you provide further technical details on the new HDL strips and/or explain why PTS believes any of its current products are not a Licensed Product under the Agreement, including all of the licensed Rittersdorf et al. patents and U.S. Pat. No. 5,366,609 to White et al. (ROM-key for biosensing meters). A reference to CardioChek.com is not sufficient, especially given the fact that PTS has not provided royalty reports since April 2006. We would be happy to prepare a confidential disclosure agreement and/or agreement regarding the admissibility of business discussions under Fed. Rule 408 for your review which addresses the treatment of any confidential subject matter received.

We also at this time are not interested in pursuing a cooperation with respect to Roche's AccuTrend business.

We look forward to hearing from you in short term regarding the issues addressed herein.

Yours truly,

Roche Diagnostics Operations, Inc.          Roche Diagnostics GmbH


Brian L. Smiler                              Hans-Joachim Neuer

2



May 18, 2007

**VIA EMAIL & FEDEX**

Mr. Brian L. Smiler
Dr. Hans Joaquim-Neuer
Senior Director
Roche Diagnostics Operations, Inc.
Intellectual Property Law
9115 Hague Rd.
Indianapolis, IN 46250-0416

Dear Mr. Smiler and Dr. Neuer:

Thank you for your letter of May 10, 2007 regarding the License Agreement dated December 2003. Please consider this letter and my letter of April 20, 2007 to be subject to Fed. Rule 408.

We believe we have already informed Roche that the Net Sales of Licensed Products in each country for the Contract Reporting Periods April-June 2006, July-September 2006, October-December 2006, and January-March 2007 have been zero. However, we present the Net Sales information again below in the format you appear to be requesting.

| Country | April-June 2006 | July-Sept. 2006 | Oct.-Dec. 2006 | Jan.-Mar. 2007 |
|---|---|---|---|---|
| USA | 0 | 0 | 0 | 0 |
| Austria | 0 | 0 | 0 | 0 |
| Belgium | 0 | 0 | 0 | 0 |
| Canada | 0 | 0 | 0 | 0 |
| France | 0 | 0 | 0 | 0 |
| Germany | 0 | 0 | 0 | 0 |
| Israel | 0 | 0 | 0 | 0 |
| Italy | 0 | 0 | 0 | 0 |
| Japan | 0 | 0 | 0 | 0 |
| Mexico | 0 | 0 | 0 | 0 |
| Netherlands | 0 | 0 | 0 | 0 |
| Soviet Union | 0 | 0 | 0 | 0 |
| Spain | 0 | 0 | 0 | 0 |
| Sweden | 0 | 0 | 0 | 0 |
| Switzerland | 0 | 0 | 0 | 0 |
| U.K. | 0 | 0 | 0 | 0 |

PTS, Inc. ▼ 7736 Zionsville Road ▼ Indianapolis, IN 46268 ▼ Toll Free 877.870.5610 ▼ 317.870.5610
▼ FAX 317.870.5608 ▼ www.PTSPanels.com

256103

Mr. Brian L. Smiler
Dr. Hans Joaquim-Neuer
May 18, 2007
Page 2 of 2

Although we have provided one above, we ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

We agree with you that the Stipulated Final Judgment recites that "Polymer Technology Systems, Inc. has infringed one or more claims of the patents in suit, United States Patent No. 6,171,849, 5,786,164, 6,214,570, 4,816,224, 5,366,609 by the manufacture, use, sale, and offer for sale in the United States of products that embody a claimed invention." It does not say that "Polymer Technology Systems, Inc. has infringed one or more claims of each of the patents in suit, United States Patent No. 6,171,849, 5,786,164, 6,214,570, 4,816,224, 5,366,609 by the manufacture, use, sale, and offer for sale in the United States of products that embody claimed inventions." The Roche attorneys wrote the former paragraph, and if they had wanted to state the latter, they should have done so.

We acknowledge your request for "further technical details on the new HDL strips and/or explain why PTS believes any of its current products are not a Licensed Product under the Agreement." We believe that the patent application we sent you provides all the details of the new HDL strips; and, in fact, this is the most detailed description of the technology that one could ask for, and that we provided you with just such an explanation in the first paragraph on the second page of my letter of April 20, 2007. We also note that you did not provide us with the explanation we requested as to why you think ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

It would appear from our exchange of letters that we do not have any disagreement with you regarding the License Agreement, except possibly for what form of report is required when there are no sales of Licensed Products. For the time being, we will comply with your interpretation; however, in doing so, we do not waive any rights to make our own interpretation and rely on it. We have no objection to your preparing any agreement you think is necessary to continue discussions, and we welcome such discussions.

Very truly yours,
POLYMER TECHNOLOGY SYSTEMS, INC.

Robert S. Huffstodt
President and CEO

cc:   Dr. Carl A. Forest, Esq.

256103



VIA E-MAIL (bhuffstodt@cardiochek.com)
& FEDEX

Mr. Robert S. Huffstodt
President and CEO
Polymer Technology Systems, Inc.
7736 Zionsville Road
Indianapolis, IN 46268
USA

Indianapolis, August 29, 2007

License Agreement dated Dec. 2003 re. Rittersdorf et al., Vogel et al., & White et al. Patents
(« License Agreement »)

Dear Mr. Huffstodt :

Thank you for your letter dated May 18, 2007 with respect to the above-referenced matter.

We acknowledge receipt of PTS' report or table purportedly showing Net Sales for Contract Reporting Periods April-June 2006, July-September 2006, October-December 2006, and January-March 2007 have been zero. You note on page 2 of the letter dated May 18, 2007 that we have no disagreement regarding the License Agreement, except possibly for what form of report is required where there are no sales of Licensed Products. We must reject that assertion as we cannot at this time agree with your interpretation that there have been no sales of Licensed Products since April 2006.

We continue to analyze the technical description in U.S. Pat. Pub. No. US 2006/0063267, which you noted is representative of a new technology that PTS has been using in its HDL strips since April 1, 2006. You have not however specifically indicated whether or not the published application describes all PTS assays for high density lipoprotein (HDL) cholesterol, or only PTS Panels™ HDL Cholesterol Test Strips (6 & 25/vial) – [Cat. #'s 1715, 1714], which appears to correspond to PTS' 510(k) No. K060617. For instance, are the PTS Panels™ Lipid Panel Test Strips (15/vial) – [Cat. # 1710], or CHOL + HDL Test Panel Test Strips (24/vial) – [Cat. # 1765] impregnated with a reagent providing a non-precipitating reaction to exclude non-desired analytes like that described in the '267 application?

To that point, we note that while the product insert for PTS Panels™ HDL Cholesterol Test Strips (PS-002657E Rev. 0 05/06) include dextran sulfate and magnesium chloride hexahydrate in the list of active ingredients, neither the PTS Panels™ Lipid Panel Test Strips nor the CHOL + HDL Test Panel Test Strips list these reagents, which are described in Ex. 1, para. [0040] of the '267 application. We also note the previous product insert for PTS Panels™ HDL Cholesterol Test Strips (PS-002582E Rev. 2 10/05), which is still available on CardioChek.com, lists phosphotungstic acid as a precipitation agent for non-HDLs. Phosphotungstic acid is likewise listed on the product inserts for PTS Panels™ Lipid Panel

1883001-06/2007

**Roche Diagnostics GmbH**   Sandhofer Strasse 116          Registergericht Mannheim          Geschäftsführung:
                              D-68305 Mannheim              HRB 3962                          Dr. Jürgen Schwiezer, Vorsitzender
                              Telefon +49 - 621 - 759 0     Aufsichtsrat:                     Jürgen Redmann,
                              Telefax +49 - 621 - 759 28 90 Dr. Franz B. Humer, Vorsitzender  Peter-Claus Schiller,

Test Strips (15/vial) – [Cat. # 1710] (PS-002575 E Rev. 4 09/05) as well as CHOL + HDL Test Panel Test Strips (24/vial) – [Cat. # 1765] (PS-007554E Rev. 0 08/05).

Please confirm whether the '267 application describes only the PTS Panels™ HDL Cholesterol Test Strips (6 & 25/vial) – [Cat. #'s 1715, 1714]? Unlike 510(k) No. K060617 which defines the similarities and differences between the modified PTS Panels™ HDL Cholesterol Test Strips and the predicate device (i.e., the change from a phosphotungstic acid precipitation method to a dextran sulfate inhibiting method), 510(k) No. K0235558 for the PTS Panels™ Lipid Panel Test Strips recites the cholesterol (K990688), HDL cholesterol (K993377) and triglycerides (K000586) are combined on one strip – there is no change in the HDL cholesterol assay itself. We note 510(k) No. K070017 for PTS Panels™ Metabolic Chemistry Panel Test Strips, which lists the modified HDL cholesterol test strips (K060617) as the predicate device. However, this product doesn't appear to have been marketed between April 2006 and present.

In addition to the issues raised above regarding HDL cholesterol assays in PTS' product portfolio, PTS has been silent with respect to its licensing of U.S. Pat. No. 5,366,609 (the ROM-key patent). The User Guide for both the CardioChek P•A™ Analyzer – [Cat. # 1708] and CardioChek™ Analyzer – [Cat. # 1709] each define a MEMo Chip or EEPROM that is listed in certain 510(k) filings by PTS as being substantially equivalent to that employed in the Roche ACCU-CHEK® Advantage. Please provide specific details for our consideration as to why PTS believes its CardioChek P•A™ and CardioChek™ Analyzers with various associated test strips and MEMo Chips ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

We expressly draw your attention to Roche's rights provided in the License Agreement: (i) to have an independent certified public accountant audit PTS's records pertaining to Licensed Products; (ii) to terminate the License Agreement in accordance with Section 8.2 c) and to take legal measures to protect Roche rights; and (iii) to request consultation to amicably settle the controversy and in the case of no such amicable solution to start arbitration pursuant to the rules of the German Institution of Arbitration.

Please also see that the License Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Section 11.6 provides the addresses and departments to which PTS shall send all other notices under the License Agreement. In the future Roche will not accept reports and/or notices not sent to the agreed addresses and departments.

Please note that all rights and obligations under the License Agreement belonging to Roche Diagnostics Corporation have been duly transferred to Roche Diagnostics Operations, Inc., 9115 Hague Road, Indianapolis, IN 46256.

We would appreciate receiving your response to the issues raised herein on or before Friday, September 21, 2007.

Yours truly,

| Roche Diagnostics Operations, Inc. | Roche Diagnostics GmbH | |
|---|---|---|
| *[signature]* | *[signature]* | *[signature]* |
| Brian L. Smiler | Dr. Norbert Grzibek | Verena Passauer |



September 21, 2007

**VIA EMAIL & FEDEX**

Mr. Brian L. Smiler
Senior Director
Roche Diagnostics Operations, Inc.
Intellectual Property Law
9115 Hague Rd.
Indianapolis, IN  46250-0416
email: brian.smiler@Roche.com

Dr. Norbert Grzibek
Dr. Verena Passauer
Roche Diagnostics GmBH
Licensing/External Operations
Sandhofer Strasse 116
D-68305 Mannheim
Germany

Dear Mr. Smiler, Dr. Grzibek and Dr. Passauer:

This is to acknowledge receipt of your letter of August 29, 2007. As your letter is quite lengthy and involves many details, it will take a little time to have my staff to determine the answers to your questions. I will get back to you as soon as I have the necessary information to respond.

At the same time, an initial review of your letter suggests we should meet to discuss this matter. We have some things that lend themselves more readily to showing directly to you in conjunction with a face-to-face discussion rather than to description in a letter. Please let me know if you think such a meeting is appropriate.

Very truly yours,
POLYMER TECHNOLOGY SYSTEMS, INC.

Robert S. Huffstodt
President and CEO

PTS, Inc. ▼ 7736 Zionsville Road ▼ Indianapolis, IN 46268 ▼ Toll Free 877.870.5610 ▼ 317.870.5610
▼ FAX 317.870.5608 ▼ www.PTSPanels.com

263180



PER REGISTERED MAIL
Polymer Technologiey Systems, Inc.
President and CEO Mr. Robert Huffstodt
7736 Zionsville Road
Indianapolis, IN 46268
USA

Mannheim, August 21, 2008
License Agreement between Roche and PTS, effective August 1, 2003, Royalty Examinations

Dear Mr. Huffstodt,

We are writing you to advise that Roche Diagnostics has decided to examine the royalty-payments under the License Agreement with Polymer Technology Systems, Inc. with an Effective Date of August 1, 2003. The royalty-period to be examined shall commence August 1, 2003 and last until July 31, 2008.

As a first step, the examination will comprise an inspection of copies of written materials that the examiner will ask you to provide upfront, and in a second step an on-site inspection of the original materials. The examination will be carried out by PricewaterhouseCoopers LLP, an independent firm of Certified Public Accountants. A representative from PricewaterhouseCoopers LLP will be contacting you regarding the materials to be provided up-front and to arrange a visit to your facilities. Please confirm in writing and not later than September 15, 2008 the receipt of this notice and indicate the precise location of all sales- and royalty-relevant information with respect to the License Agreement between Roche and PTS with an Effective Date of August 1, 2003.

We kindly ask you for your good collaboration with Roche and PricewaterhouseCoopers LLP in this matter and would encourage you to contact us directly per telephone (+49-621-759-3942) or by e-mail (norbert.grzibek@roche.com) in case any difficulties occur. As you know, the costs of the audit must be borne by PTS (in case underpaid royalties exceed 5%) and it therefore should be in PTS' own interest to help making the audit as smooth and efficient as possible.

Looking forward to hearing from you soon.

Kind regards,

Roche Diagnostics GmbH
i. V.                i. V.


Dr. N. Grzibek     Dr. K. Raddatz

**Roche Diagnostics GmbH**   Sandhofer Strasse 116    Registergericht Mannheim    Geschäftsführung:
                             D-68305 Mannheim         HRB 3962                    Thomas Schmid, Sprecher
                             Telefon +49 - 621 - 759 0    Aufsichtsrat:           Jürgen Redmann,
                             Telefax +49 - 621 - 759 28 90    Dr. Severin Schwan, Vorsitzender    Peter-Claus Schiller,
                                                                                  Prof. Dr. Dr. Klaus Strein,
                                                                                  Franz T. Walt



VIA EMAIL & FEDEX                                    September 15, 2008

Dr. N. Grzibek
Dr. K. Taddatz
Roche Diagnostics GmbH
Sandhofer Strasse 116
D-68305 Mannheim
Germany

License Agreement between Roche and PTS; Royalty Examinations

Dear Drs. Grzibek and Raddatz:

This letter acknowledges receipt of your letter of your letter of August 21, 2003. All information relevant to the audit will be provided either at PTS, or at a site close to PTS, depending on the volume of documents requested and to be provided. We, of course, will require the auditor and his firm to sign a confidentiality agreement, and the materials provided may be used only for purposes of the audit. Once the specific auditor is known to us, we will inform you if the auditor is acceptable as per the Agreement.

Very truly yours,
POLYMER TECHNOLOGY SYSTEMS, INC.

Robert S. Huffstodt
President and CEO

cc:   Dr. Carl A. Forest, Esq.