UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| POLYMER TECHNOLOGY SYSTEMS, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Cause No.  1:10-cv-0061 LJM-TAB |
| ROCHE DIAGNOSTICS CORPORATION, ROCHE DIAGNOSTICS GMBH, ROCHE DIAGNOSTICS OPERATIONS, INC., ROCHE OPERATIONS LTD., | ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF ROCHE'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION,
AND IN OPPOSITION TO PTS'S MOTION TO ENJOIN ARBITRATION**

## TABLE OF CONTENTS

Pages

TABLE OF AUTHORITIES .................................................................................................... ii

ARGUMENT ..............................................................................................................................2

I.   The Court Should Dismiss This Case and Compel Arbitration of PTS's
     Declaratory Judgment Claim of Non-Infringement. ............................................................2

     A.   The Interpretation Advanced by PTS is Based on Mischaracterizations of
          Section 5.3 of the License Agreement. .....................................................................3

     B.   The Only Reasonable Construction of the License Agreement Precludes
          PTS From Asserting a Non-Infringement Claim. ......................................................6

     C.   The Court Should Deny PTS's Motion to Enjoin Arbitration of
          Infringement Issues. ...................................................................................................8

II.  The Court Should Dismiss PTS's Claim Seeking a Declaratory Judgment of
     Invalidity. .............................................................................................................................8

     A.   PTS's Invalidity Claim Is Barred By the Settlement Agreement and
          General Principles of Res Judicata. ...........................................................................8

     B.   The Court Should, in the Alternative, Decline to Exercise Declaratory
          Judgment Jurisdiction Over the Invalidity Claim. ...................................................12

III. The Court Should Dismiss PTS's Claim for Attorney Fees. .............................................15

CONCLUSION ..........................................................................................................................15

**TABLE OF AUTHORITIES**

**Federal Cases**

*Ariad Pharms. Inc. v. Eli Lilly and Co.*,
  598 F.3d 1336 (Fed. Cir. 2010).................................................................................................. 14

*Baseload Energy, Inc. v. Roberts*,
  654 F. Supp. 2d 21, 26-27 (D.D.C. 2009).................................................................................... 9

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340, 1353 (Fed. Cir. 2007)........................................................................................ 13

*Corp. v. Town of Cicero*,
  220 F.3d 522, 529-31 (7th Cir. 2000) ........................................................................................ 10

*DH Tech., Inc. v. Synergystex Int'l, Inc.*,
  154 F.3d 1333, 1345 (Fed. Cir. 1998)........................................................................................ 15

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279, 293 (2002)............................................................................................................. 3

*Exelon Generation Co., LLC v. Local
  15, Intern. Broth. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 646-47 (7th Cir. 2008) .......... 3, 5

*Fredrick v. Simmons Airlines, Inc.*,
  144 F.3d 500, 504 (7th Cir. 1998) ............................................................................................... 9

*Hallco Mfg. Co., Inc. v. Foster*,
  256 F.3d 1290, 1294 (Fed. Cir. 2001).......................................................................................... 9

*Hernandez v. City of Goshen, Indiana*,
  324 F.3d 535 (7th Cir. 2003) ....................................................................................................... 8

*Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*,
  804 F.2d 129 (Fed. Cir. 1986).............................................................................................. 13, 14

*James Cape & Sons Co. v. PCC Const. Co.*,
  453 F.3d 396, 400-01 (7th Cir. 2006) .......................................................................................... 9

*John Hancock Mut. Life Ins. Co. v. Olick*,
  151 F.3d 132 (3d Cir. 1998)......................................................................................................... 8

*Jones v. Bock*,
  549 U.S. 199, 215 (2007)............................................................................................................. 9

*Korszun v. Public Techs. Multimedia, Inc.*,
  96 Fed. Appx. 699, 2004 WL 874811, at *1 (Fed. Cir. 2004).................................................... 13

*Liquid Dynamics v. Vaughan Co., Inc.*,
   355 F.3d 1361, 1371 (Fed. Cir. 2004) .................................................................................. 13

*Medimmune Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ....................................................................................................... 12, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1, 24-25 (1983) ....................................................................................................... 3

*Muhammad v. Oliver*,
   547 F.3d 874, 878 (7th Cir. 2008) ......................................................................................... 9

*Nasalok Coating Corp. v. Nylok Corp.*,
   522 F.3d 1320, 1327 n.5 (Fed. Cir. 2008) ........................................................................... 10

*Nystrom v. TREX Co., Inc.*,
   339 F.3d 1347, 1351 (Fed. Cir. 2003) .................................................................................. 13

*Ohio-Sealy Mattress Mfg. Co. v. Duncan*,
   714 F.2d 740, 744 (7th Cir. 1983) ....................................................................................... 14

*Phonometrics, Inc. v. Northern Telecom Inc.*,
   133 F.3d 1459 (Fed. Cir. 1998) ............................................................................................ 13

*Rhone-Poulenc Specialites Chimiques v. SCM Corp.*,
   769 F.2d 1569 (Fed. Cir. 1985) .............................................................................................. 7

*Solaia Tech. LLC v. ArvinMeritor, Inc.*,
   No. 02 C 4704, 2006 WL 695699, at *12-13 (N.D. Ill. Mar. 16, 2006) .............................. 10

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468, 476 (1989) ....................................................................................................... 3

*Wilton v. Seven Falls Co.*,
   515 U.S. 277, 288 (1995) ..................................................................................................... 13

**Federal Statutes**

28 U.S.C. §2201(a) ................................................................................................................. 12

Polymer Technology Systems, Inc. ("PTS") does not dispute that its non-infringement claim is encompassed by the broad arbitration clause in the License Agreement, and that its invalidity claim is precluded by the plain language of both the Stipulated Final Judgment and the Settlement Agreement. PTS's opposition brief simply ignores the dispositive language in those agreements and instead, focuses entirely on a misleading—and incorrect—characterization of a single provision in the License Agreement, Section 5.3, which, according to PTS, somehow "carved out" its right to bring its claims in this action. However, the plain language of Section 5.3 demonstrates that it does not provide PTS with any right to bring a non-infringement or invalidity claim in federal district court.

In arguing to the contrary, PTS ignores the fact that Section 5.3 addresses ███████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████ There is nothing in Section 5.3 that affirmatively grants either party any right to commence an action in district court. Moreover, Section 5.3 can hardly be construed to grant PTS the right to challenge the validity of the '609 patent when ████████████████████████████████████████ ██████████████████████████████. In an effort to further bolster its arguments as to its infringement claim, PTS improperly attempts to rewrite Section 5.3 ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ PTS's flawed

1

effort to rewrite this section is an implicit admission that the plain language does not support PTS's position.[1]

PTS's arguments boil down to the position that notwithstanding (1) the dismissal with prejudice of the prior action in 2003, (2) the expansive consent judgment entered by the Court, (3) the covenant-not-sue contained in the Settlement Agreement, and (4) the arbitration clause in the License Agreement, PTS should nevertheless be permitted to litigate the issues of non-infringement and invalidity as if the 2003 action had never been filed and the subsequent settlement had never occurred.  That result defies common sense, the parties' intentions as expressed in the language of three separate agreements, and the public policies favoring the preservation of final judgments and the settlement of disputes through arbitration.

Accordingly, the Court should dismiss the complaint with prejudice, deny PTS's cross motion to enjoin the arbitration and compel PTS to arbitrate its claim of non-infringement.[2]

## ARGUMENT

I. **The Court Should Dismiss This Case and Compel Arbitration of PTS's Declaratory Judgment Claim of Non-Infringement.**

Since PTS does not dispute that its non-infringement claim falls within the plain language of the arbitration clause, the only question before the Court is whether the parties somehow

---

[1] In an effort to distract the Court from the issues raised by Roche's motion, PTS engages in a lengthy discourse on how Roche is collaterally estopped by this Court's prior claim construction of the '609 patent.  Later acknowledging the irrelevance of that argument to the pending motion to dismiss, PTS notes that "[a]t the appropriate time, PTS will be more than willing to fully brief this collateral estoppel issue." (Opp. Br. _0 n.7.) PTS has also submitted lengthy affidavits ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These affidavits raise factual disputes outside the pleadings that cannot be decided on a motion to dismiss and are, therefore, nothing more than a second distraction from the core issues before the Court.  *See, e.g.*, *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 504 (7th Cir. 1998) ("Affidavits are not properly considered in deciding upon a motion under Rule 12(b)(6)."). Finally, Roche strongly disputes PTS's characterization of the settlement negotiations leading up to the settlement of the previous lawsuit between the parties, but since these assertions are wholly irrelevant to the instant motion Roche will not address them in this reply.

[2] "Khan Decl." refers to the Declaration of Omar A. Khan in Support of Roche's Motion to Compel Arbitration and to Dismiss the Action.

"carved out" PTS's right to bring a non-infringement claim against Roche.[3]  (Opp. Br. 10.) PTS's argument flatly ignores the powerful presumption in favor of arbitrability when interpreting arbitration provisions as broad as the one at issue in this case.  As the Supreme Court has repeatedly noted, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) ("[A]mbiguities in the language of the agreement should be resolved in favor of arbitration."); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.").

The presumption in favor of arbitrability is heightened in this case because the License Agreement uses the broadest possible "arise out of or in connection with" language.  *Exelon Generation Co., LLC v. Local 15, Intern. Broth. of Elec. Workers, AFL-CIO*, 540 F.3d 640, 646-47 (7th Cir. 2008).  A "carve out" in the License Agreement must be evidenced by an "express provision excluding a particular grievance from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration." *Id*.  PTS has failed to meet its burden in this regard.

### A.   The Interpretation Advanced by PTS is Based on Mischaracterizations of Section 5.3 of the License Agreement.

In its effort to transform Section 5.3 into a "carve out" that would permit it to bring an *infringement* claim in this Court, PTS presents a selective quote ████████████████████
████████████████████████████████████████████

---

[3]   Roche has not contended that PTS's invalidity claim is arbitrable.  (Br. at 6-9.)  Roche has consistently maintained that, for the reasons stated in its opening brief and *infra* Section II.A, PTS's invalidity claim should be dismissed as barred by the Settlement Agreement and by the doctrine of res judicata.  (*Id*. at 9-12)  PTS's opposition brief repeatedly mischaracterizes Roche's position in this regard.  (Opp. Br. 14.)



PTS's argument fails at an even more fundamental level, however, because there is no affirmative authority in Section 5.3 for either party to assert any claims against the other in federal district court, regardless of whether those claims relate to infringement or to invalidity. Consistent with the Stipulated Final Judgment and the Settlement Agreement, the second to last sentence of █████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

(*Id.*) ███████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
█████████████████████████   ███████████
███████████████████████████████████████
████████████████████████

Where the parties intended to confer any rights under the License Agreement, including rights to commence legal proceedings, they did so in clear language by using the words "shall" or "grant." ████████████████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████

Under PTS's interpretation of the License Agreement, and its misguided attempts to read into section 5.3 language that which is not there, ████████████████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

---

4  ███████████████████████████████████
██████████ There is no provision in the License Agreement, or any of the other documents executed as part of the resolution of the 2003 litigation, that gives PTS any right to bring a non-infringement declaratory judgment action in federal district court.

5

███████████████████████████████████████████████ This bizarre interpretation, which defies both logic and common sense, finds no support in the language of the License Agreement. To the contrary, it flies in the face of the arbitration clause, which makes clear that "[a]ny dispute or claim which may arise out of or in connection with this Agreement or the breach, termination or validity thereof shall be settled by binding or final arbitration." (Khan Decl. Ex. 5, License Agreement § 12.1.)

In short, the Court should reject PTS's proffered interpretation based on the plain language of Section 5.3 of the License Agreement.

### B. The Only Reasonable Construction of the License Agreement Precludes PTS From Asserting a Non-Infringement Claim.

PTS objects to Roche's reading of the plain language of the License Agreement on the ground that a broad interpretation of the arbitration clause would require ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ (Opp. 13-14.) There is no merit to that argument.[5]

The best evidence of the parties' intentions as to the scope of the arbitration clause is the language of the clause itself. In this case, the parties employed the broadest possible "arising out of or in connection with" language to define the scope of their obligation to submit disputes to arbitration. ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[5] PTS also argues that Roche's interpretation would "place[] PTS in the position of having to guess whether or not it is meeting the terms of the License Agreement," which, according to PTS, suggests that the Agreement "lacks the clarity necessary to determine whether there is a breach." (*Id.*) The License Agreement is not "vague" or "lacking in clarity" merely because it does not provide for PTS to bring a non-infringement claim in federal district court. Nothing in the License Agreement precluded PTS from initiating an arbitration to resolve the parties' instant dispute over whether PTS's products infringe the '609 patent and are thus covered by the License Agreement. ████ ████████████████████████████████████████ it is clear that PTS had no independent interest in resolving any infringement dispute. Roche, however, is due royalties under the Agreement and, given the breakdown in the parties' pre-suit discussions, had no choice but to commence an arbitration against PTS pursuant to the arbitration clause.

6

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

PTS fails to even mention, much less address, the Federal Circuit's decision in *Rhone-Poulenc Specialites Chimiques v. SCM Corp.*, 769 F.2d 1569 (Fed. Cir. 1985), which is discussed in Roche's opening brief at page 8. In *Rhone-Poulenc*, the defendant-licensee, SCM, informed the plaintiff-licensor, Rhone Poulenc, that "from a technical standpoint [SCM] now is in a position to operate completely outside the scope of the claims specifically claim 2 in RPI's '485 patent." *Id*. at 1570-71. When Rhone Poulenc brought suit against SCM in federal district court, SCM sought to enforce the broad arbitration clause in their license agreement. *Id.* The dispute, as framed by the Court, was over "whether SCM is or is not operating within the scope of claim 2 of the '485 patent so that a [] royalty under the agreement . . . . is due." *Id*. Noting that "[a]lthough the dispute involves claim interpretation, it *arises* out of the agreement," the Court held that "the determination of the scope and infringement of the [patent] are the quintessence of the agreement and that the parties intended such central determinations to be included within the scope of the arbitration clause." *Id.*

As *Rhone Poulenc* makes clear, PTS's claim that the CardioChek® devices do not infringe the '609 patent is central to whether these products are Licensed Products, and the claim is therefore governed by the broad "arise out of or in connection with" language of the License Agreement's arbitration clause. Accordingly, the Court should dismiss the non-infringement claim, and compel arbitration of all issues pertaining to infringement of the '609 patent.

7

C.  **The Court Should Deny PTS's Motion to Enjoin Arbitration of Infringement Issues.**

An injunction against arbitration can issue only if the moving party can demonstrate either that the parties did not enter into a valid arbitration agreement, or that the dispute between the parties does not fall within the language of the arbitration agreement.  *See John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132 (3d Cir. 1998).  Since the parties are in agreement that Section 12.1 of the License Agreement is a valid and enforceable arbitration clause, and the only reasonable construction of that clause mandates arbitration of infringement issues "arising out of or in connection with" the License Agreement, the Court should deny PTS's motion to enjoin arbitration of the issue of whether the accused products infringe the '609 patent.

II. **The Court Should Dismiss PTS's Claim Seeking a Declaratory Judgment of Invalidity.**

A.  **PTS's Invalidity Claim Is Barred By the Settlement Agreement and General Principles of Res Judicata.**

PTS's arguments in defense of its decision to assert an invalidity claim appear to be calculated to distract the Court from the core issues raised by Roche's motion.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rather, the question is whether Roche has made out a defense of res judicata and/or waiver based on the complaint and the documents incorporated by reference therein.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ a motion to dismiss must be decided on the pleadings alone, and as a matter of law, the Court should exclude those affidavits in deciding the motion to dismiss.  *See Hernandez v. City of Goshen, Indiana*, 324 F.3d 535 (7th Cir. 2003) (noting that the sufficiency of the complaint under Rule 12(b)(6) must be decided "based on the pleadings alone"); *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 504

(7th Cir. 1998) ("Affidavits are not properly considered in deciding upon a motion under Rule 12(b)(6).").

In its complaint, PTS failed to affirmatively allege that its current line of CardioChek® devices is "colorably different" from the CardioChek® devices that were accused in the 2003 litigation. *See*, *e.g.*, *Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001). To the contrary, the complaint ███████████████████████████████████ replete with references to the current products *being the same* as those in the earlier action. (Br. at 12)[6] Accordingly, Roche has established its affirmative defense of res judicata on the face of the pleadings alone. *Jones v. Bock*, 549 U.S. 199, 215 (2007) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face"); *Muhammad v. Oliver,* 547 F.3d 874, 878 (7th Cir. 2008) (defense of res judicata is appropriate for disposition on a 12(b)(6) motion). Since PTS has not requested leave to replead, the complaint should be dismissed with prejudice. *See James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (holding that a district court did not abuse discretion in dismissing claims with prejudice where the plaintiff did not request leave to amend and pleadings were deficient).

But even assuming that there were a colorable difference between the current and earlier versions of the CardioChek® devices, PTS has discharged any invalidity claims as to the patents at issue in the 2003 action, *i.e.* U.S. Patent Nos. 6,171,849, 5,786,164, 6,214,570, 4,816,224, and 5,366,609, that were set forth in the Stipulated Final Judgment between the parties dated December 29, 2003. *See, e.g.*, *Baseload Energy, Inc. v. Roberts*, 654 F. Supp. 2d 21, 26-27 (D.D.C. 2009) (enforcing agreement to waive invalidity); *see generally Flex-Foot*, 238 F.3d at 1365 (agreement to preclude validity challenge based on future products is enforceable); *Nasalok*

---

[6] While PTS does allege in the Complaint that it "sells no product covered by the '609 patent" (Compl. ¶ 18), the relevant inquiry is not whether PTS sells a non-infringing product but whether the accused products are substantially the same as those in the 2003 litigation. *See Hallco*, 256 F.3d at 1294.

*Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1327 n.5 (Fed. Cir. 2008) (agreement to preclude validity challenge is enforceable "even where the second action involves a new device"); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529-31 (7th Cir. 2000) (holding that litigants may "broaden[] the action—at least for res judicata purposes—by agreeing to a settlement of that case which included" additional claims).

PTS does not dispute that the plain language of the Settlement Agreement and the Stipulated Final Judgment preclude it from asserting invalidity claims as to any CardioChek® products. In the Stipulated Final Judgment, the parties agreed to dismiss not only Roche's claim that PTS's products infringed the '609 patent, but "[a]ll *other* claims, counterclaims, defenses, and requests for relief *of any kind*, … pertaining to the causes of action in [that] case." (Compl. Ex. B (emphasis added).) The Settlement Agreement between the parties provides in relevant part that "all their claims with respect to the . . . Roche Action, whether known or unknown are definitely set aside." (Khan Decl. Ex. 4, Settlement Agreement § 4.5.) As reflected in Article 6(a) of the Settlement Agreement, that provision includes a "covenant-not-to-sue" which is generally understood to discharge claims arising out of "future acts." *Solaia Tech. LLC v. ArvinMeritor, Inc.,* No. 02 C 4704, 2006 WL 695699, at *12-13 (N.D. Ill. Mar. 16, 2006) (*citing* 29 Williston on Contracts § 73:1). The broad language in the Stipulated Final Judgment and the Settlement Agreement plainly encompasses a claim for a declaratory judgment invalidating the '609 patent, which was a patent-in-suit in the 2003 litigation.

As discussed *supra* Section I.A, Section 5.3 was not intended to "carve out" any rights to commence litigation in district court. ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████ On that basis alone, the Court ought to reject PTS's position that it should be permitted to undo the parties' settlement and to litigate the validity of the patents at issue in the 2003 action.

Even if Section 5.3 of the License Agreement were understood to grant PTS a limited right to challenge the validity of the licensed patents, that provision cannot be construed to nullify the waivers effected by the Stipulated Final Judgment and the Settlement Agreement. ██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
█████████████

If the License Agreement were understood to confer some rights with respect to invalidity claims, the only consistent reading of all three agreements—the License Agreement, the Stipulated Final Judgment, and the Settlement Agreement—████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████

11

[REDACTED]

### B. The Court Should, in the Alternative, Decline to Exercise Declaratory Judgment Jurisdiction Over the Invalidity Claim.

PTS's principal argument against declining jurisdiction over the invalidity claim reflects a fundamental misunderstanding of the scope of the Court's discretionary authority to entertain declaratory judgment actions. PTS cites the recent decision of the Supreme Court in *Medimmune Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), as support for the proposition that the Court has jurisdiction over a licensee's declaratory judgment of invalidity claim regardless of whether there is a pending infringement action. The question in *Medimmune*, as framed by the Court, was whether a licensee must cease paying royalties under a patent license in order to satisfy the case-or-controversy requirement of Article III of the Constitution. *Id.* at 128. The Court held that a declaratory judgment plaintiff "was not required, insofar as Article III is concerned, to break or terminate its . . . license agreement before seeking a declaratory judgment in federal court that the underlying patent is invalid, unenforceable, or not infringed." *Id.*

*Medimmune* is wholly inapposite because Roche has not argued that PTS would lack Article III standing to maintain a declaratory judgment claim of invalidity, if the question of infringement were resolved in the arbitration in PTS's favor. As noted in Roche's opening brief, even if a "case or controversy" exists as a technical matter, the Court exercises broad discretion to decline declaratory judgment jurisdiction over PTS's invalidity claim. (Br. at 14.) This discretionary authority derives from the Declaratory Judgment Act, which provides that a court "*may* declare the rights and other legal relations of any interested party," 28 U.S.C. §2201(a) (emphasis added). Indeed, the Supreme Court in *Medimmune* expressly affirmed the "federal

12

courts' unique and substantial discretion in deciding whether to declare the rights of litigants," and in fact, remanded to the district court to consider "the equitable, prudential, and policy arguments in favor of such a discretionary dismissal" of the declaratory judgment claim of invalidity. 549 U.S. 118, 136-37 (2007).

Among the many factors that are considered by district courts in deciding whether to entertain declaratory judgment claims, the most oft-cited in patent cases is that the controversy over the invalidity of the patent-in-suit has been, or may well be, "mooted" by the resolution of the parties' dispute on infringement. *See, e.g.*, *Liquid Dynamics v. Vaughan Co., Inc.*, 355 F.3d 1361, 1371 (Fed. Cir. 2004); *Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003); *Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459 (Fed. Cir. 1998); *Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*, 804 F.2d 129 (Fed. Cir. 1986).[7]

On the facts of this case, considerations of judicial economy and efficiency strongly favor dismissal of PTS's invalidity claim. If PTS prevails in the arbitration, the essential dispute between the parties over the non-payment of royalties will have been resolved. While PTS speculates as to the possibility of being accused of infringement for as yet unspecified or undeveloped products, that hypothetical dispute is neither before this Court ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[7] "Mootness," in this context, is not used in the Article III sense of the same word. *See, e.g.*, *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1353 (Fed. Cir. 2007) (noting that cases in which the infringement question has been resolved, but the invalidity claims remains, "are not moot in the Article III sense of the term."); *Korszun v. Public Techs. Multimedia, Inc.*, 96 Fed. Appx. 699, 2004 WL 874811, at *1 (Fed. Cir. 2004) ("We have held that although a district court may dismiss counterclaims of invalidity as moot in appropriate cases in the exercise of its discretion, the counterclaims are not moot as a matter of law."); *see also Liquid Dynamics Corp.*, 355 F.3d at 1370-71 ("A district court judge faced with an invalidity counterclaim challenging a patent that it concludes was not infringed may either hear the claim or dismiss it without prejudice, subject to review only for abuse of discretion."); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.").

13

As the Federal Circuit has noted, the significant investment of time and resources required by parallel proceedings that may become unnecessary, or "moot," is reason enough to decline jurisdiction over PTS's invalidity claim at this time. *See Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*, 804 F.2d 129 (Fed. Cir. 1986) (jurisdiction over the invalidity claims should be declined when a parallel action involving issue of whether accused infringer was licensed to the patent "could well moot the patent suit" seeking invalidity).

PTS argues that the instant litigation will outpace the arbitration, given this Court's prior construction of the '609 patent and ████████████████████████████████ ████████████ ████████████ ████████████ However, a patent is "presumed to be valid," and this presumption "only can be overcome by clear and convincing evidence to the contrary." *Ariad Pharms. Inc. v. Eli Lilly and Co.*, 598 F.3d 1336 (Fed. Cir. 2010). Questions of invalidity entail fact-intensive inquiries into the scope and content of the prior art, necessitating costly and extensive fact and expert discovery. ████████████ ████████████████████████ it is widely recognized and appreciated that arbitration is a "quick and efficient method for determining controversies." *Ohio-Sealy Mattress Mfg. Co. v. Duncan*, 714 F.2d 740, 744 (7th Cir. 1983).[8] Accordingly, Roche respectfully submits that if PTS is not barred as a matter of law from asserting its invalidity claim, the most efficient manner in which to resolve the matter would be to dismiss the invalidity claim without prejudice.[9]

---

[8] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[9] In the alternative to dismissing the validity claim, the Court should stay the action until the conclusion of the arbitration proceedings. *See Intermedics Infusaid, Inc. v. Regents of Univ. of Minn.*, 804 F.2d 129 (Fed. Cir. 1986) (suggesting that the district may, in its discretion, dismiss and/or stay the declaratory judgment action).

**III.    The Court Should Dismiss PTS's Claim for Attorney Fees.**

PTS does not contest the fact that an award of attorney fees under Section 285 is a statutory remedy available only to "prevailing parties," and not a separate cause of action upon which relief can be granted. *See DH Tech., Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1345 (Fed. Cir. 1998). Moreover, since PTS is precluded from re-litigating issues of non-infringement and invalidity of the '609 patent, PTS's "claim" for attorneys fees should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should deny PTS's motion to enjoin the arbitration, dismiss the complaint in its entirety, and compel arbitration of PTS's non-infringement claim.

Dated: May 7, 2010                                    Respectfully submitted,


/s Robert J. Gunther, Jr._____
Robert J. Gunther, Jr. (admitted *pro hac vice*)
James P. Barabas (admitted *pro hac vice*)
Violetta G. Watson (admitted *pro hac vice*)
Omar Khan (admitted *pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, New York 10022
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email:   robert.gunther@wilmerhale.com
            james.barabas@wilmerhale.com
            violetta.watson@wilmerhale.com
            omar.khan@wilmerhale.com

Nancy G. Tinsley, Atty. No. 15376-49-A
nancy.tinsley@roche.com
Associate General Patent Counsel, IP Litigation
Roche Diagnostics Operations, Inc.
9115 Hague Road, P.O. Box 50457
Indianapolis, IN  46250-0457
Telephone: (317) 521-1915
Facsimile: (317) 521-2883

15

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on this 7th day of May, 2010, copies of the foregoing Motion to File Certain Documents Under Seal, and the redacted Reply Memorandum in Support of Roche's Motion to Compel Arbitration and to Dismiss the Action, and in Opposition to PTS's Motion to Enjoin Arbitration, were filed with the Court. Notice of these filings will be sent to the following parties by operation of the Court's electronic filing system. Parties may access these filings through the Court's system.

The following document has been served on counsel for the Plaintiff by email: unredacted Reply Memorandum in Support of Roche's Motion to Compel Arbitration and to Dismiss the Action, and in Opposition to PTS's Motion to Enjoin Arbitration.

dhensel@taftlaw.com
cforest@pattonboggs.com
gperrone@pattonboggs.com
rziemian@pattonboggs.com

/s Omar A. Khan
Omar A. Khan