IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

POLYMER TECHNOLOGY SYSTEMS,
INC.

Plaintiff,

v.                          CIVIL ACTION NO.  1:10-cv-0061 LJM-TAB

ROCHE DIAGNOSTICS CORPORATION,
ROCHE DIAGNOSTICS GMBH, ROCHE
DIAGNOSTICS OPERATIONS, INC.,
ROCHE OPERATIONS LTD

Defendants.

## PLAINTIFF'S REPLY MEMORANDUM IN
## SUPPORT OF MOTION TO ENJOIN ARBITRATION

### INTRODUCTION

Defendants  Roche  Diagnostics  Corporation,  Roche  Diagnostics  GmbH,  Roche

Diagnostics  Operations,  Inc.,  and  Roche  Operations  Ltd.  (collectively  "Roche")  base  their

opposition to Polymer Technology Systems, Inc.'s ("PTS") motion to enjoin the arbitration on its

interpretation of Section 5.3 of the License Agreement.  In so opposing PTS's motion, however,

Roche does not dispute and offers no contrary evidence to the evidence presented by PTS that

the device that Roche now accuses of infringement is different than the PTS product Roche

accused in the 2003 Litigation.  Thus, res judicata does not bar this action.  In addition, in its

memorandum,  PTS  presented  evidence  that  neither  Roche  Diagnostics  GmbH  nor  Roche

Diagnostics, Inc., the ████████████████████████████████████████████████,

actually  own  United  States  Patent  No.  5,366,609  ("the  '609  patent")  and  hold  rights  in  the

License Agreement.  In its opposition to PTS's motion, Roche submitted no evidence to the

contrary.  Thus, this action is the first properly filed action raising the issues of infringement and validity of the '609 patent.  Since arbitration of the patent infringement and invalidity issues raised here is not required under the License Agreement, PTS's motion to enjoin Roche from arbitrating these issues should be granted.

## ARGUMENT

## I.    The License Agreement Does Not Require the Parties to Arbitrate Patent Infringement and Invalidity

The crux of Roche's opposition to the motion to enjoin, like its motion to compel, is that the Licensing Agreement's arbitration provision is iron clad and that the parties' ability to file a federal district court action on the infringement or invalidity of the '609 patent is in no way contemplated by the License Agreement.   In its opposition, Roche objects to the contrary evidence submitted by PTS; however, Roche's argument is misplaced.

Roche erroneously suggests that the Court cannot consider PTS's affidavits because such exhibits are outside the pleadings.    Despite Roche's mischaracterization otherwise, Roche's motion to compel arbitration and dismiss is not a motion governed by the evidentiary limitations of Rule 12(b)(6), but rather is considered a Rule 12(b)(3) motion: "When venue is otherwise proper and a defendant contends that the plaintiff has agreed to arbitrate the dispute, a motion to dismiss for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure is the proper vehicle for raising the issue."  *Cornett Restoration LLC v. Am. Slate Co.*, No. 1:07-cv-1541-DFH-DML, 2009 WL 2020766 at *1 (S.D. Ind. July 8, 2009) (citing *Continental Casualty Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)).   In *Continental Casualty*, the Seventh Circuit expressly rejected the argument that motions to compel arbitration were subject to the evidentiary restrictions of a Rule 12(b)(6) motion.  *Continental Casualty*, 417 F.3d at 732-33.  Instead, when deciding motions to compel arbitration, "the court may consider evidence

outside the pleadings, resolve factual disputes outside the pleadings, and resolve factual disputes through use of appropriate procedures." *Cornett Restoration*, 2009 WL 2020766 at *1 (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001)).  Here, the Court must consider PTS's affidavits in order to rule on Roche's motion to compel arbitration and dismiss.

Moreover, Roche appears to understand this principle, as it too submitted numerous exhibits outside the pleadings in support of its motion to compel arbitration and dismiss.[1]  As Roche recognized by filing exhibits outside the pleadings, the Court must consider the parties' evidence outside the pleadings in order to appropriately resolve the parties' competing motions to compel and enjoin arbitration.

With regard to the merits of Roche's opposition, Roche argues that Section 5.3 of the License Agreement is merely a termination of rights provision, rather than a provision that grants a right to resolve patent disputes in court.

Roche's argument is flawed.  Section 5.3 does not, as Roche contends, forbid PTS from initiating a court action.  To the contrary, Section 5.3 is a manifestation of the parties' intent that termination of the License Agreement is the price that PTS *may* pay if PTS files suit challenging, among other things, infringement or invalidity.  If PTS files an action placing in issue whether a PTS product is a licensed product (i.e., otherwise infringes) or a Licensed Patent is invalid, then Roche may immediately terminate the License Agreement. If PTS asserts the various patent defenses in an infringement *action* brought by Roche, which may be an arbitration or a court litigation, Roche may not terminate the License Agreement.  But if PTS does "bring or prosecute by itself….any proceedings relating to" among other things infringement or invalidity, then

---

[1] Roche's exhibits outside the pleadings include: (1) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Roche may terminate the License Agreement.  The quid pro quo couldn't be made any clearer by the language of Section 5.3.  If the parties didn't consider federal district court litigation an avenue for resolving substantive patent disputes, then why did Roche include this two-tiered termination regime?  Further, if filing a district court litigation is, as Roche seems to suggest, a breach of the License Agreement, then why isn't termination automatic?  Also, if the License Agreement forbids either party from filing an action such as this and compels arbitration, how can Section 5.3 be read, as Roche admits, as permitting only Roche to file suit?  Regardless of the spin Roche attempts to place on Section 5.3, the License Agreement recognizes Roche's right to assert an infringement *action* and PTS's right to "bring or prosecute[] by itself….*any proceedings* related to" among other things infringement or invalidity.[2]

Roche also argues that infringement actions are not included in section 5.3.  In doing so, Roche ignores *Rhone-Poulenc Specialties Chimiques v. SCM Corp.*, 769 F.3d 1569 (Fed. Cir. 1985), cited by Roche, where the Court considered the scope and infringement of the patent the "quintessence" of a license agreement.   Thus, when Section 5.3 refers to an action initiated by PTS regarding "licensing of the Licensed Patent Rights", it necessarily refers to the scope and infringement of those patents.

Roche also argues that if it prevails on infringement, then this Court would have to stop short of awarding damages because Roche must then ██████████████████████████ ████████████████████████████████.  (Roche Reply Br. at 5-6.) This is a mischaracterization.   The License Agreement accommodates the scenario that this action

---

[2] It is also curious that Roche argues that all of PTS's defenses are barred by res judicata, yet supports its strained reading of Section 5.3 on PTS's ability to assert the various defenses in response to an infringement action filed by Roche.   Which is it?  If the License Agreement executed as part of the settlement not only gives PTS the ability to assert the full panoply of patent defenses but allows PTS to do so in a defensive posture without the risk of Roche terminating the License Agreement, how can PTS's defenses be barred?  If anything, the License Agreement reflects the parties' intent that the defenses that PTS could have raised in 2003 were not surrendered.

presents.  If Roche had elected to terminate the License Agreement in response to PTS's filing of this action, then the ███████████████████████████████████████████.  Instead, if Roche were to prove infringement, any damages would be awarded by this Court as they would be in any patent litigation.   On the other hand, if (as is the case here) Roche elected not to terminate the License Agreement, and the new PTS product is found to be covered by the '609 patent, ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████.   This is another example of how the License Agreement contemplates and accommodates federal district court patent litigation.

## II.     This Action is the First and Only Properly Filed Action Raising Issues of Infringement and Invalidity of the '609 Patent

PTS supported its motion to enjoin with significant evidence that the Arbitration Claimants assigned the '609 patent well before PTS stopped paying royalties, do not currently own the '609 patent and hold no rights or obligations under the License Agreement.   In its opposition, Roche offered no arguments or evidence to the contrary.  "If a party lacks title to a patent, that party has no standing to bring an infringement action under that patent."  *Lans v. Digital Equipment Corp.,* 252 F. 3d 1320, 1328 (Fed. Cir. 2001) (internal quotations omitted); *in accord, Green v. Le Clair,* 24 F. 2d 74, 77 (7th Cir. 1928). "Generally, one seeking money damages for patent infringement must have held legal title to the patent at the time of the infringement."  *Rite-Hite Corp. V. Kelly Co., Inc.,* 56 F.3d. 1538, 1551-52 (Fed. Cir. 1995). Roche has offered nothing to establish that the ████████████████████████████████. Roche did not even allege ████████████████████████████████████████████████████████████ ████████████████████████████. Since the filing of this action by PTS is permissible under the

License Agreement and no other properly filed action was pending when PTS filed this action, the Arbitration should be enjoined.

To the extent that Roche opposes PTS's motion to enjoin because this action is barred by res judicata, Roche has failed to carry its burden.   In order for res judicata to bar PTS's complaint, Roche has the burden to show that the device at issue in the 2003 Litigation and the now-accused device are the same.   *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 480 (Fed. Cir. 1991).   PTS submitted extensive evidence describing the differences between the products. Roche, other than arguing that the evidence submitted by PTS should not be considered, offered only the unsupported and unsworn statement of its attorneys.   However, the unsworn and unsupported statements of counsel for Roche must be disregarded.   *Vivid Technologies, Inc. v. American Science & Engineering*, 200 F. 3d 795, 812 (Fed Cir. 1999) ("The truth of a disputed material fact can not be established on attorney statement alone.").   The only evidence before the Court is that the difference between the device accused in the 2003 Litigation and the current PTS device is substantial.   As discussed in PTS's opposition to Roche's motion to compel, the settlement of the 2003 Litigation does not bar this action and serves as no basis to deny PTS's motion to enjoin.

In its memorandum, PTS also presented evidence and argument that ██████████ ███████ were precluded from relitigating the construction of the '609 patent by this Court's summary judgment holding against Roche in the HDI litigation.   This Court's HDI construction and the ████████████████████████████ create a significant hurdle for any Roche infringement claim against PTS.   In its reply, Roche once again chose not to controvert or respond to these facts and arguments.

## CONCLUSION

In light of the foregoing, the Plaintiffs respectfully request that the Court issue an order enjoining defendants from arbitrating the issue of infringement in Germany.

Respectfully submitted this 17th day of May, 2010.

/s/David J. Hensel
David J. Hensel (Atty No.:  15499-49)
Abram B. Gregory (Atty. No.: 25602-49)
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana  46204
Telephone:  317-713-3500
Facsimile:  317-713-3633
Email: dhensel@taftlaw.com
Email:  agregory@taftlaw.com

Carl A. Forest
Gregory Perrone
Robert P. Ziemian
PATTON BOGGS LLP
1801 California Street, Suite 4900
Denver, CO  80202
Telephone:  303-894-6114
Facsimile:   303-894-9239
Email:  Cforest@pattonboggs.com
Email:  Gperrone@pattonboggs.com
Email:  rziemian@pattonboggs.com

Attorneys for
Polymer Technology Systems. Inc.

1238117-1

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2010, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

James P. Barabas
james.barabas@wilmerhale.com

Abram B. Gregory
agregory@taftlaw.com

Robert J. Gunther, Jr.
Robert.gunther@wilmerhale.com

Carl A. Forest
cforest@pattonboggs.com

Omar A. Khan
Omar.kahn@wilmerhale.com

Gregory Perrone
gperrone@pattonboggs.com

Violetta G. Watson
Violetta.watson@wilmerhale.com

Robert P. Ziemian
rziemian@pattonboggs.com

Nancy G. Tinsley
nancy.tinsley@roche.com

*/s/David J. Hensel*
David J. Hensel